MAGISTRATE JUDGE BROWN

FILED
MAR 2 1 2013
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT
JUDGE AMY ST. EVE

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | No. 12 CR 842 |
| ) | |
| v. ) | Violations: Title 18, United States |
| ) | Code, Sections 922, 924, 1201, 1512, |
| STEVEN MANDELL, ) | 1951, 1958 and 2 |
| formerly known as, "Steven Manning" ) | |
| ) | **SUPERSEDING INDICTMENT** |

## COUNT ONE

**JUDGE ST EVE**

THE SPECIAL JANUARY 2012 GRAND JURY charges:

1. Beginning no later than in or around September 2012, and continuing until October 25, 2012, in Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

STEVEN MANDELL,
formerly known as, "Steven Manning,"

defendant herein, did conspire with Gary Engel to knowingly and unlawfully seize, confine, kidnap, abduct, carry away, and hold for ransom and reward and otherwise another person, namely Victim 1, and to use means, facilities, and instrumentalities of interstate commerce in committing and in furtherance of the offense, in violation of Title 18, United States Code, Section 1201(a)(1).

2. It was part of the conspiracy that defendant MANDELL and Engel agreed to abduct Victim 1 by pretending to be law enforcement officers who had authority to arrest Victim 1.

3. It was further part of the conspiracy that MANDELL and Engel agreed that, after they abducted Victim 1, they would transport Victim 1 to an office on the Northwest side of Chicago (the "Office") where they would hold, torture, extort and murder Victim 1.

4. It was further part of the conspiracy that MANDELL and Engel agreed that after Victim 1 was confined in the Office, MANDELL and Engel would use force and threats of force to compel Victim 1 to (i) reveal where Victim 1 kept quantities of bulk cash in Victim 1's residence and elsewhere, so that the cash could be stolen by MANDELL; and (ii) sign legal documents concerning the transfer of real estate to MANDELL.

5. It was further part of the conspiracy that MANDELL and Engel agreed that, after obtaining whatever property as they were able to obtain through the use of force and threats of force against Victim 1, Victim 1 would be murdered, and Victim 1's body would be drained of blood and dismembered by using among other things, knives, a butcher block, a large sink and a counter installed within the Office for this purpose.

6. It was further part of the conspiracy that an heir of Victim 1 would be murdered if the heir made a claim to real estate transferred to MANDELL.

7. It was further part of the conspiracy that between October 23, 2012, and October 25, 2012, MANDELL and Engel prepared the Office so it could be used for the restraint, torture, extortion and murder of Victim 1.

8. It was further part of the conspiracy that one or more of the conspirators obtained, maintained and used various tools and instrumentalities in order to assist in carrying out the kidnapping, restraint, extortion, torture and murder of Victim 1, including but not limited to: handcuffs, false law enforcement identification documents and badges, a forged arrest warrant, police scanners, walkie-talkies, cellular telephones, a ski mask, a wheelchair, zip-ties, anchors, a firearm, goggles, saws, a butcher block, knives, and a hemostat.

9. It was further part of the conspiracy that the conspirators misrepresented, concealed and hid, caused to be misrepresented, concealed and hidden, and attempted to misrepresent, conceal and hide the nature and purposes of the conspiracy.

### Overt Acts

10. It was further part of the conspiracy that defendant MANDELL and Engel committed one or more of the following acts, among others, in furtherance of and to effect the objects of the conspiracy:

    a. On or about September 22, 2012, MANDELL entered into a lease for the Office.

    b. On or about September 30, 2012, MANDELL traveled to the workplace of Individual A, and discussed the planned abduction of Victim 1.

    c. On or about October 3, 2012, MANDELL used a cellular telephone operated on the interstate network of AT&T to confirm a meeting with Individual A

the following day, at which time MANDELL would conduct a walk-through of the Office and discuss renovations to the Office.

   d. On or about October 4, 2012, MANDELL traveled to the Office, and specified what he wanted installed within the Office, including but not limited to a large sink and a counter top capable of supporting two to three hundred pounds in weight.

   e. On or about October 14, 2012, MANDELL traveled to the workplace of Individual A, and discussed the planned abduction of Victim 1, and also discussed the murder of an heir of Victim 1 who was in a position to make a claim to Victim 1's real estate after Victim 1's death.

   f. On or about October 18, 2012, MANDELL traveled to various locations in a western suburb of Chicago, Illinois, in a 2004 white Ford Crown Victoria automobile, bearing Illinois license plate P48 ****, and took photographs of real property owned by Victim 1.

   g. On or about October 18, 2012, MANDELL used a cellular telephone operated on the interstate network of AT&T to talk to Individual A about real estate properties associated with Victim 1 that MANDELL had photographed.

   h. On or about October 22, 2012, MANDELL took delivery of legal documents that MANDELL would force Victim 1 to sign in order to transfer real property to MANDELL.

   i. On or about October 23, 2012, MANDELL traveled to the Office in a 1994 white Lexus automobile, bearing Illinois license plate N79 ****, and upon

4

arriving at the Office, MANDELL and Engel planned where Victim 1 would be restrained within the Office after Victim 1's abduction.

j.  On or about October 24, 2012, MANDELL and Engel traveled to the Office and prepared themselves and the Office for the abduction of Victim 1.

k.  On or about October 24, 2012, MANDELL purchased two pairs of handcuffs from a business in Chicago, Illinois.

l.  On or about October 24, 2012, MANDELL purchased several prepaid cellular telephone cards.

m.  On or about October 25, 2012, MANDELL and Engel traveled to the Office and conducted further preparations for the abduction of Victim 1.

n.  Between on or about October 23, 2012 and October 25, 2012, MANDELL and Engel brought multiple cellular telephones to the Office for use in connection with the kidnapping and restraint of Victim 1, and placed test calls over cellular telephones during this time.

o.  On or about October 25, 2012, MANDELL and Engel traveled to the workplace of Individual A in a 2004 white Ford Crown Victoria automobile, bearing Illinois license plate P48 ****, for the purpose of abducting Victim 1.

In violation of Title 18, United State Code, Section 1201(c).

## COUNT TWO

THE SPECIAL JANUARY 2012 GRAND JURY further charges:

Beginning no later than in or around September 2012 and continuing until on or about October 25, 2012, in the Northern District of Illinois, Eastern Division, and elsewhere,

STEVEN MANDELL,
formerly known as, "Steven Manning,"

defendant herein, did conspire with Gary Engel to obstruct, delay, and affect commerce by extortion, that is, the extortion of United States currency and real property from Business 1, and from Victim 1, the owner of Business 1, with Victim 1's consent to be induced by the wrongful use of actual and threatened force and violence and fear, as "extortion" and "commerce" are defined in Title 18, United States Code, Section 1951(b).

In violation of Title 18, United States Code, Section 1951(a).

## COUNT THREE

THE SPECIAL JANUARY 2012 GRAND JURY further charges:

Beginning no later than in or around September 2012 and continuing until on or about October 25, 2012, in the Northern District of Illinois, Eastern Division, and elsewhere,

STEVEN MANDELL,
formerly known as, "Steven Manning,"

defendant herein, did knowingly attempt to obstruct, delay and affect commerce by extortion, that is, the extortion of United States currency and real property from Business 1, and from Victim 1, the owner of Business 1, with Victim 1's consent to be induced by the wrongful use of actual and threatened force and violence and fear, as "extortion" and "commerce" are defined in Title 18, United States Code, Section 1951(b).

In violation of Title 18, United States Code, Section 1951(a).

## COUNT FOUR

THE SPECIAL JANUARY 2012 GRAND JURY further charges:

On or about October 25, 2012, at Chicago, in the Northern District of Illinois, Eastern Division,

STEVEN MANDELL,
formerly known as, "Steven Manning,"

defendant herein, knowingly possessed a firearm, namely, one Ruger .22 caliber pistol bearing serial number 16-27339, in furtherance of a crime of violence for which the defendant may be prosecuted in a court of the United States, namely, a violation of Title 18, United States Code, Section 1201(c) and violations Title 18, United States Code, Section 1951(a), as further set forth in Count One, Count Two and Count Three, respectively, of this superseding indictment;

In violation of Title 18, United States Code, Sections 924(c)(1)(A) and 2.

## COUNT FIVE

THE SPECIAL JANUARY 2012 GRAND JURY further charges:

On or about October 25, 2012, at Chicago, in the Northern District of Illinois, Eastern Division,

STEVEN MANDELL,
formerly known as, "Steven Manning,"

defendant herein, having previously been convicted of a crime punishable by a term of imprisonment exceeding one year, knowingly possessed a firearm, namely, one Ruger .22 caliber pistol bearing serial number 16-27339, which firearm was in and affecting interstate commerce, in that the firearm had traveled in interstate commerce prior to the defendant's possession of the firearm;

In violation of Title 18, United States Code, Section 922(g)(1).

## COUNT SIX

THE SPECIAL JANUARY 2012 GRAND JURY further charges:

1. At times material to Count Six of this superseding indictment:

    a. Defendant STEVEN MANDELL parked a 2001 Nissan Maxima sedan in the vicinity of Victim 1's residence prior to the planned kidnapping of Victim 1 on October 25, 2012.

    b. On or about October 25, 2012, MANDELL was arrested during his attempt to kidnap Victim 1 and was detained at the Metropolitan Correctional Center in Chicago.

    c. On or about October 26, 2012, a criminal proceeding was initiated against MANDELL in the United States District Court for the Northern District of Illinois and was assigned federal criminal case number 12 CR 842. This federal criminal case remained pending as of the date of the return of this superseding indictment.

    d. In connection with federal criminal case 12 CR 842, MANDELL appeared in the United States District Court for the Northern District of Illinois on October 26, 2012, and was provided with a copy of a criminal complaint. The criminal complaint set forth in detail allegations of MANDELL's efforts to abduct, torture, extort and murder Victim 1. MANDELL was also orally advised of the charges against him.

e. After his appearance in Court on October 26, 2012, MANDELL remained in custody at the Metropolitan Correctional Center pending further proceedings in case number 12 CR 842.

f. On or about October 29, 2012, MANDELL obtained telephone privileges at the Metropolitan Correctional Center and began placing telephone calls to his wife.

g. On or about October 29, 2012, during a telephone call, MANDELL asked his wife to pick up a 2001 Nissan Maxima automobile that had been parked in close proximity to Victim 1's residence for use in connection with the kidnapping and extortion of Victim 1. MANDELL advised his wife he would provide her with the location of the vehicle at the "very last minute" in order to prevent the seizure of the vehicle.

h. On or about October 30, 2012, during a telephone call, MANDELL provided his wife with directions to find the 2001 Nissan Maxima. In a subsequent telephone call, MANDELL told his wife not to personally drive the 2001 Nissan Maxima, but to direct Individual B to pick up the Maxima and return it to MANDELL's and his wife's residence, because "maybe they'll say you're aiding and abetting a crime or something."

i. On or about October 31, 2012, during a telephone call, MANDELL's wife advised MANDELL with reference to the 2001 Nissan Maxima that she was going to "clean it out," and MANDELL responded "Yeah . . . Throw away a lot of stuff."

j. On or about November 1, 2012, during a telephone call, MANDELL asked his wife to have Individual B throw out contents from within the 2001 Nissan Maxima.

2. Between on or about October 29, 2012, and on or about November 1, 2012, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

STEVEN MANDELL,
formerly known as, "Steven Manning,"

defendant herein, knowingly attempted to corruptly persuade and engage in misleading conduct toward another person, namely, his wife, with intent to cause or induce his wife and Individual B to alter, destroy, mutilate and conceal an object, namely, a 2001 Nissan Maxima automobile and its contents, with the intent to impair the integrity and availability of the automobile and its contents for use in an official proceeding, namely, federal criminal case 12 CR 842;

In violation of Title 18, United States Code, Section 1512(b)(2)(B).

## COUNT SEVEN

THE SPECIAL JANUARY 2012 GRAND JURY further charges:

On or about October 5, 2012, in the Northern District of Illinois, Eastern Division,

STEVEN MANDELL,
formerly known as, "Steven Manning,"

defendant herein, did knowingly use a facility of interstate commerce, namely, a 2004 Ford Crown Victoria automobile, bearing Illinois license plate P48 ****, with intent that a murder be committed, in violation of the laws of the State of Illinois (720 ILCS 5/9-1), namely, the murder of Victim 2, as consideration for a promise and agreement to pay a thing of pecuniary value, namely, a portion of the revenues generated from an adult entertainment club;

In violation of Title 18, United States Code, Section 1958(a).

## COUNT EIGHT

THE SPECIAL JANUARY 2012 GRAND JURY further charges:

On or about October 5, 2012, at approximately 6:20 p.m., in the Northern District of Illinois, Eastern Division,

>STEVEN MANDELL,
>formerly known as, "Steven Manning,"

defendant herein, did knowingly use a facility of interstate commerce, namely, a cellular telephone operated on the interstate network of AT&T, a cellular telephone service provider, with intent that a murder be committed, in violation of the laws of the State of Illinois (720 ILCS 5/9-1), namely, the murder of Victim 2, as consideration for a promise and agreement to pay a thing of pecuniary value, namely, a portion of the revenues generated from an adult entertainment club;

In violation of Title 18, United States Code, Section 1958(a).

## FORFEITURE ALLEGATION

THE SPECIAL JANUARY 2012 GRAND JURY further alleges:

1. The allegations contained in Counts Four and Five of this superseding indictment are re-alleged and incorporated herein by reference for the purpose of alleging forfeiture pursuant to Title 18, United States Code, Section 924(d)(1) and Title 28, United States Code, Section 2461(c).

2. As a result of the violations of Title 18, United States Code, Sections 922(g)(1) and 924(c)(1)(A), as alleged in the foregoing superseding indictment,

STEVEN MANDELL,
formerly known as "Steven Manning,"

defendant herein, shall forfeit to the United States, pursuant to Title 18, United States Code, Sections 924(d)(1), and Title 28, United States Code, Section 2461(c), any and all right, title, and interest he may have in any property involved in the charged offenses.

3. The interests of the defendant subject to forfeiture pursuant to Title 18, United States Code, Section 924(d)(1), and Title 28, United States Code, Section 2461(c) include: one Ruger .22 caliber pistol bearing serial number 16-27339 and 94 rounds of .22 caliber ammunition;

All pursuant to Title 18, United States Code, Section 924(d)(1) and Title 28, United States Code, Section 2461(c).

A TRUE BILL:

_____
FOREPERSON


_____
ATTORNEY FOR THE UNITED STATES
ACTING UNDER AUTHORITY
CONFERRED BY 28 U.S.C. § 515