UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 12 CR 842 |
| | ) | Hon. Amy J. St. Eve |
| STEVEN MANDELL, | ) | |
| also known as, "Steven Manning" | ) | UNDER SEAL |

## GOVERNMENT'S SUR-REPLY TO DEFENDANT'S MOTION TO SUPPRESS

The UNITED STATES OF AMERICA, by ZACHARY T. FARDON, United States Attorney for the Northern District of Illinois, hereby submits this sur-reply pursuant to this Court's order calling for a response to the arguments made by the defendant in his reply in support of a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978). In support of this sur-reply, the government respectfully represents as follows:

## ARGUMENT

### The Defendant Has Not Made the "Rare" Showing Entitling Him to a *Franks* Hearing.

*Franks* hearings are "rarely held" because the defendant must make a "substantial preliminary showing" that (1) a statement was omitted from the affidavit; (2) the statement was omitted for the specific purpose of misleading the issuing judge or with reckless disregard as to whether it would mislead the issuing judge; and (3) the omitted information was material. Response at 15-16 (citing *Franks*, 438 U.S. at 155-56;

*United States v. Maro*, 272 F.3d 817, 821 (7th Cir. 2001) (quoting *United States v. Swanson*, 210 F.3d 788, 790 (7th Cir. 2000)); *United States v. McMurtrey*, 704 F.3d 502, 511 & n.5 (7th Cir. 2013) (citing *United States v. Tate*, 524 F.3d 449, 455 (4th Cir. 2008) and *United States v. Colkley*, 899 F.2d 297, 300-01 (4th Cir. 1990)).[1]

When a defendant alleges that information has been improperly omitted from an affidavit, an omitted fact is only material when it would have negated the finding of necessity. *Cf. Whitlock v. Brown*, 596 F.3d 406, 411 (7th Cir. 2010). In other words, a reviewing Court must ask whether a hypothetical affidavit that included the omitted information would still establish necessity. *Id.* (citation omitted). Where a defendant claims information was improperly omitted from an affidavit, the Court does not consider this information in isolation; rather, the Court must consider all other information that would undermine or cast doubt on the relevance and materiality of the omitted information the defendant points to. *Cf. United States v. Williams*, 737 F.2d 594, 604 (7th Cir. 1984) (in determining impact of alleged omitted information to probable cause determination, reviewing court must consider all inculpatory material that was omitted from the affidavit, in addition to all exculpatory material) (citation omitted).

---

[1] *Franks* hearings usually concern challenges to the issuing judge's probable cause finding. Here, the defendant alleges that omissions from the affidavit affected the issuing judge's necessity determination. The abuse of discretion standard of review applies to the issuing judge's determination of necessity. Response at 5-6, 12-13. As to the *separate* claim of whether a *Franks* hearing is necessary, the Court considers that issue *de novo* using the exacting test described herein (which was also referenced in the government's response). Contrary to the implication in the defendant's reply, Reply at 9, the government did not contend otherwise in its response.

However, it is a rare instance when a *Franks* hearing is merited based on an omission, *Mays v. City of Dayton*, 134 F.3d 809, 815 (6th Cir. 1998), because an allegation of omission opens up "endless conjecture about investigative leads, fragments of information or other matter that might, if included, have redounded to defendant's benefit." *United States v. Atkins*, 107 F.3d 1213, 1217 (6th Cir. 1997) (citing *Colkley*, 899 F.2d at 301). Indeed, omitted information that is only "potentially relevant" but not dispositive is not sufficient to order a *Franks* hearing. *Colkley*, 899 F.2d at 301.

**A. There Were No Material Omissions from the Affidavit's Discussion of Necessity Concerning the Identity of Mandell's Accomplice.**

The defendant continues to engage in this sort of impermissible "endless conjecture" by relying on several fragments of information to argue that the government sought to intentionally mislead the issuing judge about the identity of Mandell's accomplice. As discussed below, none of the information the defendant proffers, either individually or collectively, was sufficient to identify Mandell's accomplice. The omission of this information was therefore immaterial to the necessity determination. Because the information was not material, there is no need for a *Franks* hearing.

**1. Tracking Records Potentially Relevant to Another Crime Did Not Constitute Proof of Engel's Involvement in the Subject Offenses.**

The subject offenses for which the government sought authority to intercept were conspiracy to commit extortion and attempt to commit extortion in violation of 18 U.S.C. § 1951. The defendant argues that there was some evidence of Engel's involvement in a different offense—murder for hire of Victim 2 in violation of 18 U.S.C.

§ 1958—and that the government's failure to note Engel's potential involvement in a different offense, for which the government did not seek interception authority, was a material omission.

This argument is frivolous. As an initial matter, the "proof" defendant Mandell claims demonstrates Engel's involvement in the murder for hire of Victim 2 was slim, at best, at the time the affidavit was sworn out. What the government knew at that time was that Mandell had used a tracking device to track Victim 2's wife. That tracking device was monitored using an on-line account that had been opened in Engel's name, and an email account with Engel's name had logged into the account several times. But the government had no proof, assuming that it was Engel that logged on to the account, that Engel had any knowledge of the reason *why* Mandell was tracking this woman. Engel would have had a ready defense to any such claim that he lacked such knowledge.[2] Indeed, Mandell did not discuss using an accomplice to murder Victim 2 in the way he had explained the need for an accomplice in connection with the extortion of Victim 1, and when he was seen attempting to do surveillance of Victim 2, he was alone, [redacted] So the government did not have any solid proof of Engel's knowledge of, or participation in, the planned murder of Victim 2. If the government did not have solid proof of Engel's involvement in the murder of Victim 2, it obviously follows that this evidence could not have been used to demonstrate Engel's participation in a completely different crime—the planned extortion of Victim 1.

---

[2] Indeed, after his arrest, Engel indicated in an MCC prison call on October 30, 2012, at approximately 8:38 a.m., that he had helped Mandell track people but claimed ignorance about the criminal purpose behind the tracking.

Using the defendant's odd yardstick of evidentiary relevance demonstrates the fallacy of his argument. As noted above, the government had evidence that [redacted] Quite obviously this did not necessarily mean that [redacted]—unless one uses the defendant's flimsy logic of convenience.[3]

Even if we assume there was some evidence to demonstrate that Engel had a role in the planned murder of Victim 2, as the government noted in its response (which the defendant does not dispute), there was plenty of evidence that [redacted]

[3] Indeed, there is no doubt that if the government *had* included information concerning contact with Engel in the affidavit, and Engel were still alive, he would move to suppress on the ground that the government had [redacted]

The defendant argues that the "entire case" was about the alleged planning of the murders of Victim 1 and Victim 2 and so Engel's possible involvement in the murder of Victim 2 was relevant to the necessity determination as to the extortion of Victim 1. This *ipse dixit* is simply untrue. The government did not apply to intercept communications concerning murder for hire in violation of 18 U.S.C. § 1958; it applied to intercept communications concerning extortion in violation of 18 U.S.C. § 1951. Consistent with this authority, the interceptions made pursuant to the Court's authority concerned the extortion of Victim 1, not the murder of Victim 2. Merely because defendant Mandell was a prolific criminal who was ultimately charged with several additional crimes does not change the limited nature of the application the government made on October 18, 2012.

Finally, even if we continue to assume the government had some limited evidence of Engel's involvement in a separate crime—the murder of Victim 2—this would not affect in the least the government's need to gather proof beyond a reasonable doubt evidence of Engel's involvement in the extortion of Victim 1. After all, proof of the use of Engel's tracking account to track Victim 2's wife could not be introduced at trial in order to prove that Engel planned to extort Victim 1. The argument that since Engel committed one crime with Mandell, he therefore committed another with Mandell, would be a propensity argument that violates Rule 404(b) of the Federal Rules of Evidence. As the government noted in its initial filing, the government may show necessity where the evidence is needed to satisfy its heavy burden of proving guilt beyond a reasonable doubt at trial and to prove the specific role of a conspirator. Response at 14-15 (citing *United States v. Campos*, 541 F.3d 735, 748 (7th Cir. 2008)). So Engel's possible involvement in the murder of Victim 2 (based on the tenuous fact that a tracking device on Victim 2's wife's vehicle was monitored from an account registered in his name) could not have been material to the issuing judge's necessity decision in any circumstance; the issuing judge would not have denied the application on the ground that there was some evidence that Engel was involved in the commission of a totally different crime that was not a Subject Offense.

### 2-3. Information Concerning Telephone Contact and Meeting between Mandell and Engel was Not Material.

The defendant insists that the government should have known that Engel was Mandell's accomplice because Mandell was in telephone contact with Engel and Mandell was seen with Engel on October 5, 2012. Reply at 13-14.

This claim is also without merit. As an initial matter, the defendant concedes that he cannot even demonstrate that the affiant was aware that Mandell and Engel were in telephonic contact. But in order to obtain a *Franks* hearing, a defendant must offer "direct evidence" of the affiant's state of mind or inferential evidence that the affiant had obvious reasons for omitting facts in order to prove deliberate falsehood or reckless disregard. *United States v. McNeese*, 901 F.2d 585, 594 (7th Cir. 1990).[6]

Even if the defendant could demonstrate that the government knew of Mandell's and Engel's telephone contact—and he concedes he cannot—this fragment of information, together with their one meeting, was not material to the issuing court's necessity determination. Essentially what the defendant is saying is that the government should have concluded Engel was involved in the Subject Offenses through a "guilt by association" theory. It is not an argument one typically hears from defense

---

[6] The government notes (though it is not required to at this stage as the defendant has failed to make the substantial preliminary showing necessary for a *Franks* hearing) that the telephone toll records [redacted] sent by the telephone service provider to an administrative assistant at the FBI on the morning of October 18, 2012—the very day the affidavit was sworn out. The defendant cannot even demonstrate that the affiant had an opportunity to review the toll records before the affidavit was sworn out. Moreover, the defendant fails to mention in his motion and reply that the telephone toll records did not contain any subscriber information for this telephone number. Information subsequently provided by the telephone service provider reveals that the phone was actually subscribed in the name of [redacted]

counsel, because defense counsel well knows that the government cannot establish guilt based on this impermissible theory. The affiant recognized this as well. His affidavit stated that telephone contact did not establish that such contacts concern criminal activities. Aff. ¶ 56. A similar admonition appeared as to physical surveillance. *Id.* ¶ 47 (physical surveillance led investigators to "speculate as to the purpose" of meetings). So the fact the two men were in touch means little and certainly would not have impacted the finding of necessity.[7]



### 4. The Prior "Relationship" between Mandell and Engel was Not Material to the Determination of Necessity.

The defendant also argues that the government should have concluded that Engel was Mandell's accomplice because they had previously committed a kidnapping together, and further argues that the government should have advised the issuing judge as well. *See* Reply at 13-14 (noting Mandell and Engel's "specific past criminal relationship" in connection with Missouri kidnapping charge). *See also* Motion at 13-14 (defense notes that Mandell and Engel had served time together on kidnapping case and that this information should have been included in affidavit). It is true that Mandell and Engel were charged for participating in the same kidnapping. But both of their convictions were vacated by reviewing courts. *State ex rel. Engel v. Dormire*, 304 S.W.3d 120 (Mo. 2010) (vacating Engel's conviction); *Manning v. Bowersox*, 310 F.3d 571 (8th Cir. 2002) (vacating Mandell's conviction). The government cannot be faulted for not including this information in the affidavit.[9]

---

[9] What makes the defendant's current position even more bizarre is that, not only was there no conviction, but the defendant also fails to mention that both he and Engel have taken the position in federal civil cases filed in this district that there was no probable cause to believe that either man had committed this kidnapping, and both sued the United States for prosecuting them without probable cause to do so. *Id.* at 699-703. Although defendant Mandell lost his case against the United States and recovered nothing, it is odd that, after proclaiming his innocence of this charge, the defendant now argues that the government should have used these facts—of a state kidnapping charge from roughly thirty years ago that did not

Not only that, but that charged kidnapping occurred in 1984—almost thirty years ago. *Engel v. Buchan*, 710 F.3d 698, 699 (7th Cir. 2013). It would be absurd to suggest that the government should have concluded that Engel was Mandell's accomplice merely because they had been charged (but not convicted) of a crime that occurred almost three decades ago, when Michael Jackson's album *Thriller* was still number one on the charts[10] and President Reagan had yet to complete his first term in office.



Indeed, if the government had included the "fragments of information" above as defendant Mandell

---

result in a conviction—in a sworn affidavit in order to establish that Engel was his accomplice in connection with the extortion of Victim 1. In any event, while the defendant now appears to admit his—and Engel's—involvement in this prior kidnapping (Why would Mandell insist the government should have detailed a crime he and Engel were not involved in together? Surely Mandell cannot be arguing that the government wrongly omitted *false* information from the affidavit.), the government did not have defendant Mandell's apparent new admission that he and Engel participated in this crime at its disposal at the time the affidavit was submitted. Furthermore, while one of the Title III interceptions made after October 18, 2012, constitutes proof of the involvement of both men in the 1984 kidnapping, this information was obviously not available to law enforcement at the time the affidavit was submitted either. The government leaves for further pre-trial briefing whether, and under what circumstances, the defendant's admission of his and Engel's "specific past criminal relationship" in connection with the 1984 kidnapping will be admissible at trial in this case.

[10] *See* http://en.wikipedia.org/wiki/List_of_Billboard_200_number-one_albums_of_1984 (visited Oct. 28, 2013). Other blockbuster hits of that era included Huey Lewis and the News' album, *Sports*, Bruce Springsteen's *Born in the U.S.A.* and Prince's *Purple Rain*.

suggests, defendant Engel, if still a party to these proceedings, likely would have filed a motion to suppress—[redacted]—but also on the ground that the government had improperly relied on information concerning the 1984 kidnapping charges.[11]

### 5. Even if Engel Could Have Been Potentially Identified as Mandell's Accomplice, there Was Still Necessity for Interception.

It is clear from the foregoing that the identity of Mandell's accomplice was unknown and there was no competent evidence that clearly identified who the accomplice was. All the information referenced above, even if "potentially relevant," was not dispositive as to who Mandell's accomplice was. *Colkley*, 899 F.2d at 301.

The defendant argues that, when all of the foregoing information was taken together, it pointed clearly to Engel as Mandell's accomplice. This is nothing more than wishful thinking. [redacted]

Even if all the omitted information discussed above was included within the affidavit, it would not have defeated a finding of necessity. As explained in the

[11] Engel's civil lawsuit against the United States (including his claim that there was no probable cause to charge him with the 1984 kidnapping) is still pending in this district.

government's response, the government is not required to demonstrate that it would be impossible to bring charges absent the use of a bug. Even if Engel had been singled out as the accomplice—and he certainly was not—the government still demonstrated necessity because the government did not have sufficient evidence to prove the extent of Engel's involvement in the conspiracy and his knowledge of the conspiracy itself. Response at 14, 24. The stated reasons for the bug included developing evidence sufficient to prove the guilt of each conspirator beyond a reasonable doubt, Aff. ¶ 45; identifying the implements and methods that would be used to carry out the extortion, i*d.* ¶ 52; and obtaining "particular details about the relative responsibilities that will be assigned to MANDELL and his co-conspirator in connection with the extortion" of Victim 1. *Id.* ¶ 54. That held true regardless of whether the government had some reason to exclude all others and consider Engel to be the accomplice. Response at 14-15.

In reply, the defendant seemingly argues that the government already had proof beyond a reasonable doubt against Engel to prove his involvement in the extortion of Victim 1. Reply at 16. Not so. For example, the defendant argues that the government had "Engel's direct participation in tracking one of the victims of the alleged conspiracy." Reply at 16. This argument is frivolous. As explained above, the tracking of Victim 2's wife *concerned a totally different crime*, not the Subject Offenses that were identified in the applications for interception. The use of an account bearing Engel's name to track Victim 2's wife did not establish Engel's knowledge of the murder of Victim 2, let alone the Subject Offenses, and it would not have been admissible at trial under Rule 404(b) in any event. The defendant also claims that the

government had "all of the recordings in which Mandell detailed the role of Engel in the alleged conspiracy." Reply at 16. This is also untrue. Engel's name was never mentioned in any of those recordings, and none of those recordings served to establish Engel's knowledge of the extortion plot, the specific acts he would take in furtherance of the extortion, the methods he would utilize to extort Victim 1, and how the conspirators specifically planned to deal with Victim 1 at the conclusion of the extortion. The government did not have strong evidence proving Engel's knowledge of the conspiracy or what implements or methods either he or Engel would use to accomplish the extortion, and it was entitled to investigate further in order to develop this evidence. Through the bug, the government was able to establish Engel's knowledge of the extortion, his agreed role in abducting, torturing, killing and dismembering Victim 1, and the methods by which Victim 1 would be abducted, tortured, murdered and dismembered, as well as the specific implements that would be used to carry out these criminal acts.

In effect, the defendant asks this Court to punish the government for attempting to gather sufficient evidence to establish Engel's and the defendant's guilt beyond a reasonable doubt. The request is quite peculiar, which is probably why the defendant is unable to cite a single case from this Circuit—or any other Circuit across the country—where a court has suppressed Title III evidence on this ground. *See* Reply at 16-17 (citing no cases in support of this argument). *Compare United States v. Lovasco*, 431 U.S. 783, 795 (1977) ("Rather than deviating from elementary standards of 'fair play and decency,' a prosecutor abides by them if he refuses to seek indictments until he is completely satisfied that he should prosecute and will be able promptly to establish

guilt beyond a reasonable doubt."). The truth is that suppression is to be used as a "last resort," not as the Court's "first impulse," *Hudson v. Michigan*, 547 U.S. 586, 591 (2006), and it is not a mechanism to punish the government simply because it has tried to gather admissible evidence that will establish the guilt beyond a reasonable doubt of all parties to a criminal conspiracy and their specific role in the offense. Just because the defendant now (incorrectly) believes (after the fact, with the benefit of hindsight) that the government had some fragments of evidence against Engel that would prove his guilt beyond a reasonable doubt doesn't overcome the fact that the government properly demonstrated a compelling need at the time the affidavit was submitted to gather evidence concerning Mandell's co-conspirator and the nature of the conspiracy. As then-District Judge Hamilton noted:

> The government's timing decision can be second-guessed from both directions. If the government stops too early, it may not have enough evidence for a sufficiently powerful prosecution at trial. If it stops too late, it is subject to criticism like that from [the defendant]. When a judgment call can be criticized from both directions, the person who must make the judgment is usually entitled to some reasonable degree of leeway in either direction.

*United States v. Soto-Nava*, No. IP 01-89-CR-1-15H/F, 2002 WL 432084, at *3 (S.D. Ind. Feb. 20, 2002). Indeed, the defendant's argument rings particularly hollow here, when one considers that both defendant Mandell and Gary Engel have previously sued the United States for false prosecution based on insufficient evidence. Because the defendant has not come anywhere close to demonstrating that there was any material omission from the affidavit, the motion should be denied without a *Franks* hearing.

### B. The Defendant Has Failed to Make a "Substantial Preliminary Showing" that the Affiant Omitted Information for the Specific Purpose of Misleading the Issuing Judge or with Reckless Disregard of Whether the Issuing Judge Would Be Misled.

The foregoing discussion also makes it pellucid that there was there was no clear indication as to who Mandell's accomplice was. First, the government barely had any evidence concerning Engel's involvement in a different crime, the murder of Victim 2, so it is untenable to think the affiant intentionally sought to mislead the issuing judge by not referencing tenuous evidence of a different crime when discussing the evidence concerning the extortion of Victim 1. Second, the defendant cannot even prove that the affiant knew of Mandell's telephone contact with Engel, but even if he could, it wouldn't have mattered, because [REDACTED] The affiant could not have intended to "mislead" Chief Judge Holderman by foregoing a flimsy "guilt by association" theory in order to implicate Engel in the abduction and murder of Victim 1. Third, the fact that Engel and Mandell were charged for another crime roughly thirty years ago could not have possibly been an omission designed to mislead. While Mandell apparently now admits his and Engel's involvement in the 1984 kidnapping, at the time the affidavit was submitted, there was no conviction of either Mandell or Engel on these charges. [REDACTED]

Omission of this information could not possibly raise an inference of an intention to mislead or reckless disregard because it was wafer-thin. [REDACTED]

[REDACTED] There has been no substantial preliminary showing of intent to mislead or reckless disregard for the truth, and the motion and the request for a *Franks* hearing should be denied.

## CONCLUSION

The defendant has failed to demonstrate there was any material omission from the agent's affidavit. Because none of the information the defendant points to was material, there is no need for a *Franks* hearing. Moreover, because the information the defendant points to did not clearly indicate Engel's involvement in the extortion of Victim 1, the defendant has also failed to make a substantial preliminary showing of intent to mislead or reckless disregard for the truth. The motion should be denied.

WHEREFORE, the government respectfully requests that the Court enter an order (i) denying defendant's motion for a *Franks* hearing; and (ii) granting the government such other and further relief as may be just and proper.

Dated: Chicago, Illinois
October 28, 2013

Respectfully submitted.

ZACHARY T. FARDON
United States Attorney

By: /s/ Amarjeet S. Bhachu
AMARJEET S. BHACHU
DIANE MacARTHUR
Assistant United States Attorneys
219 South Dearborn Street
Fifth Floor
Chicago, Illinois 60604
(312) 469-6212

## CERTIFICATE OF SERVICE

Amarjeet S. Bhachu, an Assistant United States Attorney assigned to the instant matter, hereby certifies that the attached GOVERNMENT'S SUR-REPLY TO DEFENDANT'S MOTION TO SUPPRESS was served on October 28, 2013, in accordance with Fed. R. Crim. P. 49, Fed. R. Civ. P. 5, LR 5.5, and the General Order on Electronic Case Filing (ECF) pursuant to the district court's system as to ECF filers.

/s/ Amarjeet S. Bhachu
AMARJEET S. BHACHU
Assistant United States Attorney
219 South Dearborn Street
Fifth Floor
Chicago, Illinois 60604