IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| | ) Case No. 12 CR 842 | |
| v. | ) | |
| | ) | |
| STEVEN MANDELL | ) | |

**MEMORANDUM OPINION AND ORDER**

AMY J. ST. EVE, District Court Judge:

Defendant Steve Mandell is charged in an eight-count Superseding Indictment. In advance of trial, the government has filed Consolidated Motions *in Limine*. (R. 144.) The Court previously ruled on the majority of the motions except for the scope of cross examination of ▮. The Court grants in part and denies in part this remaining aspect of the Consolidated Motions *in Limine*. In addition, the Court grants in part, grants in part without objection and denies in part the government's Motion *In Limine* Concerning Rule 608(b)[1]. (R. 138.)

**BACKGROUND**

On November 1, 2012, a grand jury returned an Indictment against Steven Mandell and his co-defendant, Gary Engel, charging two counts of extortion under 18 U.S.C. § 1951(a). (R. 13.) The Court subsequently granted the government's motion to dismiss co-defendant Gary Engel from the indictment after he was found dead in his prison cell. (R. 24.)

On March 21, 2013, a grand jury returned an eight-count Superseding Indictment against Defendant. (R. 38, Sup. Ind.) The Superseding Indictment charges Mr. Mandell with conspiracy

---
[1] The Court ruled on the Rule 404(b) aspect of this motion in a separate order. (R. 171.)

to commit kidnapping, in violation of 18 U.S.C. § 1201 (Count I); conspiracy and attempted extortion, in violation of 18 U.S.C. § 1951 (Counts Two and Three); possessing a firearm in furtherance of a crime of violence, in violation of 18 U.S.C. § 924(c) (Count Four); being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g) (Count Five); obstruction of justice, in violation of 18 U.S.C. § 1512 (Count Six); and murder-for-hire, in violation of 18 U.S.C. § 1958(a) (Counts Seven and Eight). The Superseding Indictment also contains a forfeiture allegation.

Count One charges Mr. Mandell with a conspiracy to extort Victim One. It alleges an elaborate scheme in which Defendant and co-conspirator Engel agreed to pose as police officers and arrest Victim One, take him to a designated location, torture and extort him, murder Victim One, and then chop Victim One's body into pieces. It specifically alleges that Defendant intended to use threats of force to get Victim One to disclose where he kept bulk cash in his residence so Mandell could steal it, and to execute legal documents that would transfer the ownership of certain real estate from Victim One to Defendant Mandell. Defendant and Engel then allegedly planned to kill Victim One, drain Victim One's body of blood, and dismember him. The Superseding Indictment further alleges that they "obtained, maintained and used various tools and instrumentalities in order to assist in carrying out the kidnapping, restraint, extortion, torture and murder of Victim 1, including but not limited to: handcuffs, false law enforcement identification documents and badges, a forged arrest warrant, police scanners, walkie-talkies, cellular telephones, a ski mask, a wheelchair, zip-ties, anchors, a firearm, goggles, saws, a butcher block, knives, and a hemostat." (R. 38 at ¶ 8.) Counts Two and Three charge Defendant with extortion and attempted extortion in connection with this conduct targeting Victim One on October 25, 2012.

Count Four charges Defendant Mandell with knowingly possessing a firearm in furtherance of a crime of violence. Count Five charges Defendant with being a felon in possession of a firearm, namely, a Ruger .22 caliber pistol.

Count Six charges Defendant Mandell with obstruction of justice, stemming from his alleged use of the telephone and mail privileges after his initial court appearance on October 26, 2012. (*Id.* at 10.) Counts Seven and Eight charge Defendant Mandell with murder-for-hire. These counts pertain to Defendant Mandell's alleged participation in the planned murder of Victim Two so that Mr. Mandell could take control of the revenues from an adult entertainment club. (*Id.* at 13-14.)

## LEGAL STANDARD

### I. Motions in Limine

Trial courts have broad discretion in ruling on evidentiary issues before trial. *See Jenkins v. Chrysler Motors Corp.,* 316 F.3d 663, 664 (7th Cir. 2002); *United States v. Lillie,* No. 08 CR 717, 2009 WL 3518157, at *1 (N.D. Ill. Oct. 28, 2009). "Trial courts issue rulings on motions *in limine* to guide the parties on what evidence it will admit later in trial." *Perry v. City of Chicago*, 733 F.3d 248, 252 (7th Cir. 2013). Accordingly, "[a]lthough the Federal Rules of Evidence do not explicitly authorize *in limine* rulings, the practice has developed pursuant to the district court's inherent authority to manage the course of trials." *Luce v. United States,* 469 U.S. 38, 41 n.4, 105 S. Ct. 460, 83 L. Ed. 2d 443 (1984). An *in limine* ruling avoids delays and allows the parties an opportunity to prepare themselves and witnesses for the introduction or exclusion of the evidence at issue. *See Wilson v. Williams,* 182 F.3d 562, 566 (7th Cir. 1999); *Jonasson v. Lutheran Child & Family Servs.,* 115 F.3d 436, 440 (7th Cir. 1997) ("The prudent use of the *in limine* motion sharpens the focus of later trial proceedings and permits the parties to focus their

preparation on those matters that will be considered by the jury."); *United States v. Connelly,* 874 F.2d 412, 416 (7th Cir. 1989). Ultimately, an *in limine* motion "performs a gatekeeping function and permits the trial judge to eliminate from further consideration evidentiary submissions that clearly ought not be presented to the jury because they clearly would be inadmissible for any purpose." *Jonasson,* 115 F.3d at 440.

A party seeking to exclude evidence has the burden of demonstrating that the evidence is inadmissible for any purpose. *United States v Brown,* No. 08-cr-1009, 2011 WL 43048, at *2 (N.D. Ill. Jan. 6, 2011). Regardless of a court's initial ruling on an *in limine* motion, the court may adjust its ruling during the course of the trial. *See Farfaras v. Citizens Bank & Tr. of Chicago,* 433 F.3d 558, 565 (7th Cir. 2006) (citing *Luce,* 469 U.S. at 41-42). *Perry*, 733 F.3d at 252 ("As a trial progresses, the presiding judge remains free to alter earlier rulings."). Furthermore, the court may defer ruling on a motion *in limine* until trial if the parties' arguments "cannot be evaluated accurately or sufficiently . . . in such a procedural environment." *Jonasson,* 115 F.3d at 440.

**II.   Rule 608(b)**

Rule 608(b) provides as follows:

Except for a criminal conviction under Rule 609, extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness. But the court may, on cross-examination, allow them to be inquired into if they are probative of the character for truthfulness or untruthfulness of:

**(1)** the witness; or

**(2)** another witness whose character the witness being cross-examined has testified about.

Fed. R. Evid. 608(b). Rule 608(b) allows a court to permit cross examination of a witness about specific instances of conduct "if they are probative of the [witness's] character for truthfulness or

untruthfulness." Fed. R. Evid. 608(b). As the Seventh Circuit teaches, "[t]he rule is permissive, not mandatory, leaving the court with great discretion." *First Weber Group, Inc. v. Horsfall*, 738 F.3d 767, 778 (7th Cir. 2013). The scope of the cross examination, however, is subject to Federal Rule of Evidence 403. *Id.*

## ANALYSIS

**I.  Cross Examination of Steve Mandell**

If Defendant Mandell testifies at trial, the government has identified nine instances of conduct it seeks to pursue on cross-examination pursuant to Rule 608(b). The Court will address each instance in turn.

First, the government seeks to cross-examine Defendant about his prior admission that he took bribes in his capacity as a Chicago Police officer. Defendant served as a police officer with the Chicago Police Department until 1983. Defendant objects to cross-examination on this incident. He claims that he never took bribes, but rather turned a blind eye to others taking bribes. He also contends that the incident is too remote in time. The Court agrees with Defendant that it is too remote.

Rule 608(b) permits cross examination with specific instances of conduct bearing on a witness's character for veracity. Rule 608(b) does not include a time restriction like Rule 609 does. Rule 608(b), however, requires that the specific instance of conduct bear on the witness's truthfulness. When a specific instance is remote in time, its probative value as to truthfulness lessens. *See United States v. Stoecker,* 215 F.3d 788, 790 (7th Cir. 2000) (evidence was "far too remote to be probative and it would have been unfairly prejudice.") Here, the probative value of Defendant admitting that he took bribes over 30 years ago is diluted by its remoteness in time. *Id. See also United States v. Miller*, 738 F.3d 361, 376 (D.C. Cir. 2013) (upholding district

court's decision to preclude questioning on cross examination under Rule 608(b) where the act was over thirty years old). Furthermore, under Rule 403, any potential probative value of this remote conduct is substantially outweighed by the danger of unfair prejudice. Accordingly, the government may not inquire into this area on cross-examination.

Second, according to the government, Defendant previously admitted under oath in connection with a kidnapping charge in Missouri State Court that he made efforts with third parties to develop a false alibi for trial. This trial took place in 1990 and arose out of a kidnapping in 1984. Defendant apparently wrote a series of letters to a third party to establish a false alibi and caused his girlfriend to participate in the cover story with him. The government argues that Defendant's "prior agreement to suborn perjury and his efforts to fabricate an alibi through a series of detailed letters and the employment of his girlfriend in the scheme is clearly admissible pursuant to Rule 608(b)." (R. 138 at 5.)

This conduct suffers from the same problem as the bribery, namely, it is too remote in time. Accordingly, the government may not pursue this questioning on cross examination.

Third, Defendant pled guilty in 1983 to various crimes in connection with his participation in an insurance fraud scheme. The government seeks permission to cross examine Defendant regarding the various acts of dishonesty involved in these crimes, including obtaining certificates of title for salvage vehicles using a fictitious name, stealing vehicles, causing the salvage title to be transferred to vehicles which were stolen, altering the vehicle identification numbers, and filing false insurance claims on vehicles. Because this conduct is also too remote in time to be probative, the Court denies the government's request.

Fourth, in 1987, Defendant Mandell participated in a burglary of a jewelry store to which he subsequently pled guilty. Defendant admitted under oath that he initially lied to the police

about his involvement in the burglary when they confronted him. Defendant asserts that he "corrected that statement, admitted his conduct, and actually cooperated with the investigation in that case." Although the government does not seek to elicit the nature of the crime about which Defendant lied, it has moved to cross examine him on the fact that he lied to the police. For the same reasons outlined above regarding the remote nature of this conduct and its probative value, the Court denies the government's request.

Fifth, the government contends that Defendant previously filed a false report with the Chicago Police Department indicating that he had lost his police badge because the badge subsequently was in possession of Gary Engel when the police arrested Engel for attempting to pose as police officers. The government asserts that Engel was Defendant's "confederate." This conduct occurred sometime before 1983 when Defendant left the Chicago Police Department. Again, given that this conduct took place over 30 years ago, the government's request is denied.

Sixth, the government seeks to cross-examine Defendant regarding the financial affidavit he filed in this case in connection with his request for appointment of counsel. The government contends that Defendant filed a false affidavit because he "failed to disclose tens of thousands of dollars of United States currency that he had in a safe deposit box." (R. 138 at 8.) It claims that its evidence establishes that after his arrest in this case, Defendant had his wife empty the safe deposit box and hide the cash. Defendant objects on the grounds that he claims the funds belonged to his wife, not to him. Given the government's evidence, it has a good faith basis to inquire into this area on cross examination under Rule 608(b). The information on Defendant's sworn affidavit goes directly to his truthfulness.

7

Seventh, the government moves to cross-examine Defendant regarding office equipment (a typewriter) that he stole from the Chicago Police Department when he served as a police officer. Accordingly to the government, Defendant falsely told the police that he found the typewriter outside his residence. The fact that Defendant stole a typewriter is very telling about the age of this event. Given its age and limited probative value, the Court denies the government's request to cross examine Defendant about this act.

Eighth, the government seeks to cross-examine Defendant about his possession of false law enforcement credentials. Namely, when the Federal Bureau of Investigation ("FBI") executed a search warrant at his residence on October 25, 2012, they discovered that he kept fake law enforcement credentials in his residence. This conduct is probative of his truthfulness. *See United States v. Irizarry*, 341 F.3d 273, 311 (3d Cir. 2003): *United States v. Williams*, 986 F.2d 86, 89 (4th Cir. 1993). Defendant's argument that this evidence is cumulative of the fake law enforcement badges and identification cards found on Defendant at the time of his arrest fails. The Court grants this aspect of the motion.

Finally, the government seeks to cross-examine Defendant regarding an extra-marital affair he concealed from his wife. Defendant does not object to this line of cross-examination to the extent it pertains to letters in which Defendant "proposed to his girlfriend that she lie to his wife in relation to their relationship." (R. 161 at 7.) Accordingly, the Court grants this aspect of the motion without objection.

## II. Motions Regarding Testimony of ▮▮▮▮▮▮▮▮

The government anticipates calling ▮▮▮▮▮▮▮▮ as a witness at trial. During the course of the government's investigation, ▮▮▮▮▮▮ conducted telephonic and face to face conversations with Defendant. The government seeks to preclude Defendant from questioning

███████ regarding the following: 1) his place of residence; 2) results and findings of prior litigation; 3) the investigation leading to charges ███████████; and 4) investigations not leading to charges ███████████.

In response to the government's request that Defendant notify the government regarding his intention to use Rule 608(b) evidence, Defendant listed the topics on which he seeks to cross-examine ███████████. Because many of these areas overlap with the government's motion *in limine*, the Court will address them together.

### A. Place of Residence

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

██████

### B. Results of Prior Litigation

The government moves the Court to preclude the introduction of any evidence or argument regarding prior litigation in which ███████ was involved. Defendant, on the other hand, seeks to pursue questioning regarding this prior litigation. The parties address three separate cases: 1) an action the Federal Deposit Insurance Company ("FDIC") brought against ████████████████████████████████████████████████████████████████; 2) a civil lawsuit against ████████████████████████████████████ and 3) litigation over ████████████████████████████████ ███████████ The Court will address each case separately.

### 1. FDIC Litigation

The FDIC brought charges against ███████████████████████████ ████████████████████████████████████████████████████████████ and

███████████████████████████████████████████████████
███████████████████████████████████████████████████
██████████████████████████████
██████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
██████████████████████████████████████████████
█████████████████████████████████████████████
███████████████████████

The Administrative Law Judge ("ALJ") held an extensive evidentiary hearing on the issues. The hearing ███████████████████████████████████████ ██████ testified at the hearing. After the hearing, the ALJ issued a ██████ ruling "with detailed findings ██████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
██████████████████████████████████████ The ALJ recommended that the FDIC

███████████████████████████████████████████

███████████████████████████████████████████

██████████████████

    ████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████████

████████████████████████████

Defendant seeks to question ████████████████████████████████

███████████████████████████████████████████

████████████████████████████████ Defense counsel further seeks to cross-examine him regarding the Administrative Law Judge's finding that ████████ ████████████████

The government does not object to the defense asking ████████ about the specific instances of conduct that the FDIC pursued in the lawsuit. The government concedes that these areas are probative of ████████ truthfulness. The government requests that the Court limit the questioning of these areas "in order to prevent it from getting out of hand or otherwise side-tracking the jury." (R. at 4.) In addition, the government objects to any cross examination regarding the findings and punishment that resulted in the FDIC case, as well as any credibility findings by the ALJ.

The parties dispute whether defense counsel can use the judge's credibility findings regarding ████████ and the judge's findings of fact to cross examine ████████ The Seventh Circuit addressed the issue of the use of prior judicial findings on a witness's credibility in *United States v. Dawson*, 425 F.3d 389 (7th Cir. 2005) ("*Dawson I*") and following a motion

███████████████████████████████████████████

███████████████████████████████████████████

██████████████████

████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████████

████████████████████████████

Defendant seeks to question ████████████████████████████████ ███████████████████████████████████████████ ████████████████████████████████ Defense counsel further seeks to cross-examine him regarding the Administrative Law Judge's finding that ████████ ████████████████

The government does not object to the defense asking ████████ about the specific instances of conduct that the FDIC pursued in the lawsuit. The government concedes that these areas are probative of ████████ truthfulness. The government requests that the Court limit the questioning of these areas "in order to prevent it from getting out of hand or otherwise side-tracking the jury." (R. at 4.) In addition, the government objects to any cross examination regarding the findings and punishment that resulted in the FDIC case, as well as any credibility findings by the ALJ.

The parties dispute whether defense counsel can use the judge's credibility findings regarding ████████ and the judge's findings of fact to cross examine ████████ The Seventh Circuit addressed the issue of the use of prior judicial findings on a witness's credibility in *United States v. Dawson*, 425 F.3d 389 (7th Cir. 2005) ("*Dawson I*") and following a motion

for rehearing, in *United States v. Dawson*, 434 F.3d 956 (7th Cir. 2006) ("*Dawson II*"). In *Dawson I*, the Seventh Circuit held as follows:

> In suppression hearings in two previous cases, involving other defendants, the trial judges had disbelieved testimony by three government agents who also testified for the prosecution in our case. Defense counsel in our case wanted to use those judges' rulings to impeach the three witnesses' testimony. The judge refused on the basis of Rule 608(b) of the Federal Rules of Evidence, which provides that "specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' character for truthfulness, other than conviction of crime as provided in Rule 609, may not be proved by extrinsic evidence." Our defendants were not proposing to use extrinsic evidence, however, but merely to ask each witness whether a judge had disbelieved him or her in a previous case.

*Dawson I*, 425 F.3d at 396. The government moved for a rehearing based on the issue of cross-examining a witness with judicial credibility determinations. In *Dawson II*, following the motion for rehearing, the Seventh Circuit addressed whether a lawyer can cross-examine a witness about a prior judicial determination finding the witness to be not credible. The Seventh Circuit held that "the decision whether to allow a witness to be cross-examined about a judicial determination finding him not to be credible is confided to the discretion of the trial judge; it is not barred by Rule 608(b), which, to repeat is a rule about presenting extrinsic evidence, not about asking questions." *Dawson* II, 434 F.3d at 959. In distinguishing the use of extrinsic evidence on this issue, the *Dawson II* court noted that "there would have been a problem in this case had the defendants' lawyer asked 'has any federal judge ever found that you lied on the stand?' and when the witness answered 'no' the lawyer sought to have the judge's finding placed in evidence. *That* would be 'extrinsic evidence' and would be barred by Rule 608(b) if the evidence were being used to undermine the witness's 'character for truthfulness.'" *Id.* at 958-59. *See also United States v. Holt*, 486 F.3d 997, 1002 (7th Cir. 2007). Thus, district courts have discretion to permit cross examination on prior judicial determinations of credibility.

12

Nevertheless, "[t]he trial judge [also] has a responsibility not to allow cross-examination to get out of hand, confuse the jury, and prolong the trial unnecessarily." *Dawson II*, 434 F.3d at 959.

Here, after an extensive evidentiary hearing that ███████████████████████ ████████████████████ The ALJ had the opportunity to observe ████████ credibility ████████████████████████████████. Given these factors, the Court exercises its discretion and will permit defense counsel to ask ████████ about the ALJ's credibility findings in the FDIC matter. Counsel may not, however, use extrinsic evidence for this point. *Dawson II*, 434 F.3d at 958-59.

The Court will not, however, permit defense counsel to cross-examine ████████ on the factual findings of the ALJ beyond his credibility determinations.[2] Such an inquiry will unnecessarily prolong the trial and confuse the issue. ████████████████████████ ████████████████████████. Inquiry into the ALJ's findings of these complicated transactions will lead the jury down a side road. Defense counsel's complaint that he will be unfairly stuck with ████████ first answer on these areas of inquiry is unavailing. Counsel is very experienced and talented and will have the ability to probe ████████ answers within the limits of the rules. Because the Court intends to keep the trial focused on the substance of the charges and matters bearing directly on the credibility of the witnesses, the Court precludes this line of questioning.

### 2. The ███████ Lawsuit

███████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

---

[2] Given that the Court will not permit counsel to cross examine on the factual findings of the ALJ, the Court need not determine whether these findings constitute hearsay. *See United States v.* Jones, 728 F.3d 763, 767 (8th Cir. 2013) (A majority of our sister circuits to consider the issue have held 'that judicial findings of facts are hearsay, inadmissible to prove the truth of the findings unless a specific hearsay exception exists'").

13

███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
█████████████████████████████████████████
█████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
██████████████

Defendant seeks to cross-examine ███████████ regarding his denial of the █████ ██████████████ in both his answer to the complaint and his summary judgment filing. According to Defendant, the jury verdict establishes the ██████████ lied in these filings. The Court denies Defendant's request and grants the government's motion to preclude any questioning or evidence regarding the ██████████████. The jury's verdict reflects that the ████████████████████████████████████████, not that the jury concluded ██ ██████ had lied. The record does not contain any specific credibility findings regarding ██ ██████. The underlying facts of the litigation ███████████████████ are not probative of ██████████ truthfulness. *Barber v. City of Chicago*, 725 F.3d 702, 709 (7th Cir. 2013) (Rule 608(b) "covers only specific instances of conduct bearing on a witness's character for veracity"). Moreover, any potential probative value of this evidence is substantially outweighed by the danger of unfair prejudice and misleading the jury in light of the unduly inflammatory nature of the claims in the ████████ litigation. As such, the Court precludes this area of inquiry under Rule 403.

### 3. Litigation Over █████████████

Defendant next seeks to cross-examine ███████████ regarding litigation over the

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████.

███████████████

████████████████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████████████.

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

███████████████

Defendant claims that the record is "replete with instances of the lack of truthfulness on the part of ███████████ and seeks to cross-examine him on his alleged untruthfulness and the ALJ's findings. (R. 161 at 16.) The government does not object to the defense asking ████████████████████████████████████████████████████████████. The

government, however, objects to questioning regarding the ALJ's findings, including his credibility findings, and asks the Court to impose "reasonable limits" on the questioning regarding ███████. The government argues that the findings of the ALJ are not sufficiently probative of ███████ truthfulness in this case and constitute hearsay. It further claims that any probative value of the findings is substantially outweighed by the danger of confusing the issues, misleading the jury, undue delay and wasting time.

For the same reasons discussed above in connection with the FDIC litigation, Defendant may cross examine ███████ regarding the ALJ's credibility findings in ███████ ███████. *Dawson II*, 434 F.3d at 959. Defendant may not, however, cross-examine ███ ███████ about the ALJ's factual findings in this case. Such an inquiry will confuse the issues for the jury and impose additional delay. The Court refuses to impose limits on the cross-examination, but will entertain the government's objections on the issue during the course of the cross.

### C. ███████ Alleged Bribe in Originally Obtaining a ███████



Defendant next seeks to question ███████ regarding a bribe he allegedly paid to obtain ███████████████████████. The government does not object to this line of questioning. It further does not object to cross-examination on whether ███████ ████████████████████████████████████████████ ████████████████████████████ Accordingly, the Court grants without objection Defendant's request to cross-examine ███████ regarding this alleged bribe ███████ ████████████████████████████████████████████.

**D.     Investigation Leading to Charges of ▮▮▮**

The government next seeks to preclude Defendant from questioning ▮▮▮ about the government's decision ▮▮▮

▮▮▮

▮▮▮

▮▮▮

▮▮▮ According to the government, it made the decision to charge ▮▮▮ "independent of ▮▮▮

▮▮▮ (R. 114 at 15.) The government therefore contends that "the fact that ▮▮▮

▮▮▮

▮▮▮ (R. 144 at 15.)

The government does not object to Defendant cross-examining ▮▮▮ regarding his involvement in these alleged ▮▮▮. The government further does not object to Defendant cross-examining ▮▮▮

▮▮▮

▮▮▮

▮▮▮

▮▮▮

▮▮▮

▮▮▮

Defendant may inquire about ▮▮▮ alleged involvement in some of the underlying alleged facts that go to his truthfulness under Rule 608(b). Defendant may further question ▮▮▮

17



Any potential probative value of this line of questioning is substantially outweighed by the danger of unfair prejudice in that the jury may infer that ▬▬▬ somehow ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ Based on the information before the Court, such an inference is pure conjecture.

**E. Investigations Not Leading to Charge Against ▬▬▬▬**

In addition, the government asks the Court to preclude Defendant from questioning ▬▬▬▬▬▬ about investigations ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬. According to the government, ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

Defendant has not objected to this general category, thus the Court grants it without objection.

**F. Illegal Recording of Phone Call by Individual A**

Defendant next seeks to cross-examine[3] ▬▬▬▬▬▬ regarding an illegally recorded call he made, unrelated to this case. Specifically, he made a recorded telephone call without obtaining authorization from the FBI even though the FBI previously had instructed him not to make such unauthorized recordings. In response, the government argues that recording a telephone call without prior approval is not an act that bears upon the truthfulness of the witness thus it is not a proper area of inquiry under Rule 608(b). The Court agrees. Defendant may not

---

[3] Defense counsel moved away from this position to some extent at a side bar on January 30, 2014. For the sake of completeness, the Court will address the issue here.

inquire into this area unless ▇▇▇▇ direct testimony raises an issue regarding it. Defendant must then first raise the issue with the Court outside the presence of the jury.

### G. Hiding and Not Reporting Cash

Law enforcement interviewed ▇▇▇▇ on April 20, 2005. ▇▇▇▇

▇▇▇▇ allegedly excluded from their income ▇▇▇▇

▇▇▇▇ Law enforcement has not conducted any further investigation into these allegations. These allegations are unsubstantiated and have very little indicia of reliability. As such, Defendant may not question ▇▇▇▇ about them. *See Hollins v. City of Milwaukee*, 574 F.3d 822, 828-29 (7th Cir. 2009).

### H. Alleged Bribery for ▇▇▇▇

Defendant seeks to question ▇▇▇▇ regarding an allegation that he paid an individual who was ▇▇▇▇

▇▇▇▇. A source provided this information to the government in April 2000. No further investigation or substantiation has taken place. This alleged incident is too speculative and too remote to be probative. Accordingly, Defendant may not question ▇▇▇▇ about it.

### I. Retention of Earnest Money

Defendant also wishes to question ▇▇▇▇ regarding his retention of ▇▇▇▇

▇▇▇▇. Given that

this conduct took place in 1995, it is too remote to be probative of truthfulness. *See United States v. Stoecker,* 215 F.3d 788, 790 (7th Cir. 2000).

## CONCLUSION

For the reasons above, the Court grants in part and denies in part the remaining portions of the government's Consolidated Motions *in Limine*. The Court grants in part, grants in part without objection, and denies in part the government's Motion *In Limine* Concerning Rule 608(b).

**DATED:  February 3, 2014**                    **ENTERED**

_____
AMY J. ST. EVE
U.S. District Court Judge