**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | |
| | ) | Case No. 12 CR 842 |
| v. | ) | |
| | ) | |
| | ) | |
| STEVEN MANDELL | ) | |

## **MEMORANDUM OPINION AND ORDER**

AMY J. ST. EVE, District Court Judge:

Defendant Steven Mandell has again moved for a new trial based on alleged newly discovered evidence. The Court denies Defendant's motion.

### **BACKGROUND**

On November 1, 2012, a grand jury returned an Indictment against Steven Mandell ("Mandell", or the "Defendant") and his co-defendant, Gary Engel ("Engel"), charging them with two counts of extortion under 18 U.S.C. § 1951(a). (R. 13.) The Court subsequently granted the government's motion to dismiss co-defendant Gary Engel from the indictment after he was found dead in his prison cell. (R. 24.)

On March 21, 2013, a grand jury returned an eight-count Superseding Indictment against Defendant Mandell. (R. 38, Sup. Ind.) The Superseding Indictment charged Mandell with conspiracy to commit kidnapping, in violation of 18 U.S.C. § 1201 (Count I); conspiracy and attempted extortion, in violation of 18 U.S.C. § 1951 (Counts Two and Three); possessing a firearm in furtherance of a crime of violence, in violation of 18 U.S.C. § 924(c) (Count Four); being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g) (Count Five); obstruction of justice, in violation of 18 U.S.C. § 1512 (Count Six); and murder-for-hire, in

violation of 18 U.S.C. § 1958(a) (Counts Seven and Eight). The Superseding Indictment also contained a forfeiture allegation. Defendant pled not guilty to each of the counts in the Superseding Indictment.

The jury returned a verdict of guilty against Defendant on Counts One through Six of the Superseding Indictment and not guilty on Counts Seven and Eight of the Superseding Indictment. On November 3, 2014, the Court denied Defendant's motion for a judgment of acquittal and motion for a new trial (the "November 3 Opinion"). (R. 260, Memorandum Opinion and Order.) For a detailed discussion of the evidence in the case, the Court refers to the November 3 Opinion. Defendant now moves again for a new trial.

Counts Four and Five pertain to a .22 caliber Ruger. Defendant asserts that he is entitled to a new trial because the government turned over evidence regarding the source of this firearm after the trial in this case. Specifically, the government turned over two redacted IRS Memoranda of Interview, dated January 28, 2013 and February 26, 2013.

**LEGAL STANDARD**

Rule 33(a) of the Federal Rules of Criminal Procedure provides that, "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a); *see also United States v. Berg*, 714 F.3d 490, 500 (7th Cir. 2013); *United States v. Smith*, 674 F.3d 722, 728 (7th Cir. 2012) (reviewing a district court's order on a Rule 33 motion for abuse of discretion); *United States v. McGee*, 408 F.3d 966, 979 (7th Cir. 2005). "To show that the interest of justice requires a new trial, a defendant must provide evidence that (1) came to his knowledge only after trial; (2) could not have been discovered sooner through the exercise of due diligence; (3) is material and not merely impeaching or cumulative; and (4) would probably lead to an acquittal in the event of a retrial." *United States v. Westmoreland*, 712 F.3d 1066, 1072 (7th Cir. 2013). *See also United States v.*

*Eads*, 729 F.3d 769, 780 (7th Cir. 2013). This rule is "reserved for only the most extreme cases." *United States v. Hagler*, 700 F.3d 1091, 1100 (7th Cir. 2012) (citations and quotations omitted). Such motions are approached "with great caution." *Eads*, 729 F.3d at 780.

"A *Brady* violation occurs when the prosecution suppresses evidence favorable to the defense and the evidence was material to an issue at trial." *United States v. Mota*, 685 F.3d 644, 648 (7th Cir. 2012). A defendant is entitled to a new trial based on such a violation "only if the failure to disclose the evidence resulted in denial of a fair trial." *Id.*, citing *United States v. Banks,* 546 F.3d 507, 509–10 (7th Cir. 2008). "And this happens only when the suppressed evidence is material, meaning when there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Id.* (citations omitted). *See also Youngblood v. West Virginia,* 547 U.S. 867, 870, 126 S.Ct. 2188, 165 L.Ed.2d 269 (2006) (quoting *Strickler v. Greene,* 527 U.S. 263, 280, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999)).

## ANALYSIS

Defendant claims that he is entitled to a new trial based on newly discovered evidence[1]. Specifically, Defendant contends that the government did not disclose the source of the .22 caliber Ruger at issue in Counts Four and Five until May 8, 2014 – well after the jury returned its verdict. According to Defendant, "all available evidence and information now directly points in the direction of [George] Michael as the source of the weapon." (R. 255 at 2.)

---

[1] Defendant reargues issues that the Court previously addressed in detail in its November 3 Opinion. The Court will not revisit its prior decision. Defendant, for example, asserts that "it has already been shown that the government misled the Chief Judge in various ways in the wiretap applications." (R. 255 at 14.) To the contrary, the Court has found on two separate occasions that the government did not mislead Chief Judge Holderman. *See* November 3 Opinion and (R. 127, 12/2/2013 Memorandum Opinion and Order.)

**I.     The "New Evidence" Is Not Exculpatory**

Specifically, Defendant argues that two IRS Memoranda of Interview, dated January 28, 2013 (the "January 2013 Memo") and February 26, 2013 (the "February 2013 Memo"), mandate a new trial. The January 2013 Memo reflects an interview of Individual A, and the February 2013 Memo reflects an interview of Individual B. The January 2013 Memo indicates that Individual A[2] previously was married to an individual who had an interest in the Polekatz strip club from 1976 until approximately 1982. Around the time Individual A's former spouse died in 2005, he had approximately 100 guns that were sold or abandoned. Individual B helped dispose of these firearms after the death of Individual A's spouse. Nothing in the January 2013 Memorandum suggests that the .22 Ruger was among these firearms or that Individual B sold it or otherwise provided it to George Michael. The February 26, 2013 memorandum does not provide any link to George Michael either.

Based on this information, Defendant concludes that the connection between the .22 Ruger and Polekatz "would have had tremendous value" to the defense. Specifically, Defendant asserts that "Adriana Mazutis, an owner of Polekatz, partnered with government witness George Michael, an aspiring owner of Polekatz, who conceivably obtained a gun belonging to a previous Polekatz owner." (R. 273 at 4.) This argument is a stretch, at best, and there certainly is nothing in the IRS Memoranda that amounts to exculpatory evidence. Defendant does not provide any evidence that the .22 Ruger charged in Counts Four and Five was one of the firearms that belonged to Individual A's former spouse at the time of his death, much less any evidence that George Michael obtained the .22 Ruger. Defendant claims that if the government had produced this information prior to trial, "the defense could have conducted a proper investigation

---

[2] Prior to trial, the government produced to Defendant a report showing that Individual A had purchased the .22 Ruger in 1980. Defendant knew prior to trial that Individual A purchased the .22 Ruger in 1980, but Defendant did not admit any evidence that Individual A provided George Michael with the firearm.

4

as to the source of the gun and mounted an appropriate defense." (R. 255 at 1.) He fails, however, to provide any credible link between the information regarding Individual A and her former spouse and the .22 Ruger. Nothing in either memorandum supports Defendant's latest theory.

## II.     The Information in the Reports Does Not Impeach George Michael's Testimony

Although Defendant's arguments are somewhat of a moving target, he also argues that this "new evidence" could have been used to impeach George Michael. Defendant claims that he is entitled to a new trial because Michael was a material witness and "his testimony was false." He asserts that the "jury might have returned a not guilty verdict (at least on counts four and five) in the absence of Michael's false testimony." (R. 255 at 9.) As the Seventh Circuit has noted, "ordinarily, newly discovered impeachment evidence will not warrant a new trial under *Brady*." *United States v. Salem*, 578 F.3d 682, 688 (7th Cir. 2009).

George Michael testified on redirect examination that he did not bring a gun to 5308 West Devon on or about October 23. (Trial Transcript ("Tr.") at 598.) Even Mandell testified that Engel brought the gun to Club Med, not Michael. (Tr. at 1428.) Defendant fails to logically explain how the "new evidence" is impeaching of Michael's testimony. Moreover, as noted in the Court's November 3 Opinion, the Court permitted Defendant to extensively cross examine Michael on many substantive areas, thus Defendant had ample opportunity to test Michael's credibility before the jury.

## III.    The Information Is Not Material

Defendant argues that the previously undisclosed IRS reports are relevant to the .22 caliber Ruger. Counts Four and Five pertained to the firearm. Although Defendant claims in a footnote in his reply that he seeks a new trial on all counts, Defendant does not articulate how

5

this evidence would have impacted the verdict on Counts One through Three, and Count Six.  As such, Defendant has waived this argument.  *United States v. Stein*, 756 F.3d 1027, 1031 (7th Cir. 2014).

With respect to Counts Four and Five, the evidence overwhelming established Defendant's guilt beyond a reasonable doubt.  Regarding the firearms charge in Count Four, Section 924(c)(1)(A) "provides that 'any person who, during and in relation to any crime of violence or drug trafficking crime ... uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm' shall be subject to mandatory penalties.  18 U.S.C. § 924(c)(1)(A).  For this offense, 'possession can be either actual or constructive.'"  *United States v. Cejas*, 761 F.3d 717, 727 (7th Cir. 2014) (citations and quotations omitted).  The crimes charged in Counts One, Two, and Three each qualified as a crime of violence.  The Court's November 3 Opinion details the evidence proving the crimes of violence.

In order to prove that Defendant Mandell was a felon in possession of a firearm as charged in Count Five, the government had to prove that Mandell "possessed a firearm that had traveled in or affected interstate commerce, and also that he had the requisite felony…."  *United States v. Bloch*, 718 F.3d638, 642 (7th Cir. 2013).  The firearm at issue was the .22 Ruger.

Regardless of who put the firearm at 5308 West Devon, the Title III audio and video evidence captured Mandell and Engel with the firearm at issue and talking about the use of the firearm in their plot to kidnap and torture Campbell.  Specifically, on October 25 when Defendant and Engel were discussing the torture plot, Mandell referenced the wheelchair where they previously discussed placing and restraining Campbell.  Engel said to Mandell, "[h]ere, let me tie wrap you and see if you can get out."  Mandell responds, "You better go reach for that .22."  (Gov. Ex. 5308 West Devon 10/25/2012 Transcript at 48.)  Furthermore, immediately

6

before Mandell and Engel departed to abduct Campbell, Engel puts rubber gloves on and loads the firearm. While Engel is loading the firearm, he and Mandell have the following exchange:

> Mandell: Yeah. Why are you loading up?
>
> Engel: Just going to leave it here loaded, why, why—
>
> Mandell: Ahh!
>
> Engel: -- have it sitting around here unloaded?
>
> Mandell: Okay, good answer, (inaudible) good answer….
>
> Engel: I hate doing this with gloves on.
>
> Mandell: Well, especially rubber ones.

(Gov. Ex. 5308 West Devon 10/25/2012 Transcript at 54-5.). These conversations about the .22 took place at "Club Med" while Mandell and Engel had detailed, raw discussions about the intricacies of their kidnapping and extortion plot. As noted in the Court's November 3 Opinion, they openly discussed: 1) the preparation of Club Med for the restraint, torture, murder and dismemberment of Steven Campbell, including the installation of the large sink and the need for hot water; 2) their elaborate plan to pose as law enforcement officers when they abducted Campbell; 3) what they planned to say when they approached Campbell; 4) their use of handcuffs and a fake arrest warrant with the fake "signature" of Judge Zagel; 5) how they intended to respond to law enforcement officers if they approached them during the abduction; 6) how they intended to restrain Campbell during the plot and their intent to cover his face with a ski mask; 7) their use of a firearm, if necessary, when abducting Campbell; 8) where they intended to place Campbell at Club Med and the location of their interrogation of him within the facility; 9) the methods of torture they intended to implement if Campbell failed to provide information regarding the location of his assets; 10) the methods they intended to utilize to taunt and interrogate Campbell; 11) their methods to subdue and kill Campbell, including through the

7

use of sleeping pills; 12) their plan to dismember Campbell's body after they murdered him; 13) their efforts, including placing plastic covering on the walls to capture the blood splatter, to avoid leaving any evidence of the crime at the scene; 14) how they intended to transport Campbell to Club Med and how Defendant planned to travel to his residence; 15) Mandell's plan to break into Campbell's residence and his intent to return Campbell's cell phone and car to Campbell's residence; 16) the fact that Club Med is disguised as Christian Consulting; and 17) their efforts to conceal their criminal activity. (Gov. Exs. 5308 West Devon 10/23/2012 Transcript, 5308 West Devon 10/24/2012 Transcript, 5308 West Devon 10/25/2012 Transcript.)

In addition, the FBI executed a search warrant of 5308 West Devon immediately after Mandell and Engel departed that location to "arrest" and kidnap Mr. Campbell. During the search, the agents recovered a loaded Ruger .22 caliber firearm that was stored in a sock, and two boxes of .22 caliber ammunition. They also recovered a pair of rubber gloves. As noted in the Court's November 3 Opinion, the FBI recovered many other instrumentalities of Defendant's plot during the execution of that search warrant, including plastic goggles, a butcher block with a hemostat next to it, a knife on top of the butcher block, a meat cleaver, a 55 gallon garbage container, a man's razor, a box with Smith & Wesson handcuffs written on it, a ski mask, an eye bolt, a small hand saw, a military flight suit, and several large saws, among other items.

This direct evidence from Mandell's own words captured on the Title III wiretaps when he and Engel were discussing the intricacies of their criminal plan, along with the recovery of the firearm at issue from 5208 West Devon, provided overwhelming evidence of Defendant's guilt on these counts. Given this overwhelming evidence, there is no reasonable probability that the verdict would have been different if the government had disclosed the evidence identified by Defendant.

8

Mandell cannot use his false testimony at trial to create an issue of materiality. At trial, Mandell testified as follows:

> On October 20th, which is a Saturday, I had a meeting with Mr. Michael. It was recorded. After that meeting, while we were leaving the office, Mr. Michael had said, "Listen, I got a bag here with some personal things. Would you just throw them into 5308?" I says, "Sure, I will."
>
> I left that office with this bag. I never bothered to check what was in the bag. And I drove south to Gary Engel's residence on the far south side, to visit with him at his parents'. And I gave him this bag. I said, "Gary throw in with all those props that we're going to use at 5308." And he did.
>
> Five days later, on October 25th, on Thursday, late in the afternoon, around 2:30 or so, we're both in our own respective cars and we're driving towards 5308. And we've got these – you've seen all these two-way radio communications. And Gary Engel asked me, he says, "By the way, what's with the 22?" And I said, "What 22?" He says, "The 22 you gave me on Saturday." And I just paused. I had a gut reaction. I knew something was wrong right then and there.

(Tr. at 1428). Mandell further testified that he did not say anything to Engel at that time because he "thought he would just flip out." (*Id.*) Instead, according to Mandell, he told Michael to remove the gun from Club Med. When Michael did not do so, Mandell testified that he was going to "tell [Michael] that it was over with" because "he had not removed the gun yet." (*Id.* at 1430.)

When the government cross examined Defendant regarding the gun, it pointed out that he discussed and watched Engel load the firearm at 5308 Devon. When the government asked Mandell if he told Engel not to load the gun, Mandell responded, "[w]as I supposed to?" (Tr. at 1501.)

The audio and video evidence that captured Defendant and Engel directly contradicted Defendant's testimony. Defendant, thus, cannot use it to claim that this "new evidence" was material.

9

## CONCLUSION

Defendant has failed to demonstrate a reasonable possibility that the outcome of his trial would have been different if he had had access to this evidence. Defendant's motion for a new trial is therefore denied.

DATED: December 8, 2014        ENTERED

                                                        AMY J. ST. EVE
                                                        U.S. District Court Judge